UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

GEORGE MAY,
          *Plaintiff*,

vs.                                Case No. 00-6191-C.V.-DIMITROULEAS

The SOUTH FLORIDA WATER                 (Magistrate Johnson)
MANAGEMENT DISTRICT,
          *Defendant*.
_____/

## MOTION TO DISMISS WITH PREJUDICE
## AND SUPPORTING MEMORANDUM

Governor Jeb Bush moves to dismiss the complaint with prejudice, as to himself officially[1] and individually.

### MEMORANDUM IN SUPPORT OF MOTION

#### FACTS

Two preliminary observations are essential to this motion. First, this case is substantively identical to May v. State of Florida (case no. 99-7623-C.V.-Dimitrouleas), which was dismissed with prejudice as to the State and Governor Bush officially by the Court's orders of January 20, 26 and 31, 2000. (*See* Exhibit A and composite Exhibit B hereto).

Second, all actions allegedly committed by the South Florida Water Management District (SFWMD) occurred before Governor Bush was

_____

[1]Among the grounds for dismissal is the Eleventh Amendment. By separate motion, Governor Bush moves to stay all other matters, including discovery, as to him until disposition of the Eleventh Amendment claim.

1



elected in November 1998, and thus before he took office in January 1999.  The only event alleged to have occurred after Governor Bush took office was "form letter" correspondence instigated by Plaintiff May.

Here, May's complaint names the SFWMD as the only defendant. In contrast, the summons directed service upon Governor Bush:

> Individually, and as Chief Executive Officer [of the] South Florida Water Management [District].

(See Exhibit C hereto).  Governor Bush is responding out of caution.

Paragraphs 1-4 are background matters.  Paragraph 5 alleges Defendant SFWMD "is an agency of the State of Florida and an [sic] local government now suable persons under 42 USC §1983." Paragraph 6 alleges the SFWMD took May's property for a public purpose, without compensation, under color of law.  Paragraph 7 alleges such taking effected "freeze" on the property by restricting land use before commencement of condemnation proceedings.

Paragraph 8 alleges "a variety of unconstitutional activities" by the SFWMD--including  the threat of "killing the plaintiff"-- forced May to sell his property at far less than just compensation of $5 million per acre.  It also alleges the taking was accomplished by flooding.

Paragraph 9 begins with conclusory legal assertions, but then claims officials of the SFWMD were unlawfully paid:

> by the criminal communist environmentalist, to

**2**

> robb the plaintiff's property and oil property
> under the property herein ... as the defendant can
> build desalt plants to obtain all the water they
> need from the ocean .... [sic].

Paragraphs 10-15 are legal assertions, and claims for damages.

Paragraph 16 is much the same, but adds the SFWMD's acts were done "malice ... wickedness, and evil purpose." In paragraph 17, May asserts certain rights were violated (a legal conclusion) once in 1994, twice in 1995, once in 1996 and 1997, and twice in 1999 (August and November).

Paragraph 18 alleges May "through his dissolved Corporation" purchased "property" in 1985; and that the land was usable for casino gambling, "as used by Henry Flagler." Paragraph 19 alleges he sold parcels of this property through his dissolved corporation.

Paragraph 20 alleges that in 1991, the "defendant's (sic) through their agent the South Florida Water Management [District]," flooded his property, and took it without compensation. Paragraph 21 alleges a judgment was entered against defendants for taking adjacent land.

Paragraph 22 alleges that in 1994, May received a letter from the defendant's, stating his property was appraised at $12,800 per acre.[2] It then alleges such appraised value was false, fraudulent, etc.

Paragraph 23 alleges May began receiving threats from

-----

[2]The letter was an attempt at voluntary acquisition.

defendants in 1995, and those threats interfered with May's contracts for sale, etc.   Paragraph 24 alleges May (in 1996) received by mail a "judgment without notice;" and that the judgment, based on the earlier appraisal, was placed against his corporation.   It also alleges the judgment was based on a false affidavit by a process server hired by "defendant's."

Paragraph 25 alleges May later moved to void the judgment, and started receiving threats from "defendants" that he would be killed if he did not sell his property at the appraised price.   Paragraph 26 alleges May sold the property under duress in March 1997, for the appraised price.   (Paragraphs 27 and 28 make conclusory legal observations based on May's "research of Treaty law.")

Paragraph 29 states May requested, in December 1999, compensation for the alleged taking of the property he had earlier sold, but that defendants did not provide him a forum.   It also alleges defendants took his property in March and November 1999.

Paragraph 30 alleges defendants, in a letter dated August 13, 1999, said they would pay for his property but have not done so. Paragraphs 31 through the end of the complaint include only legal conclusions, and demands for $10 million compensatory and $1 billion punitive damages.

4

ARGUMENT

1.  **As Against Governor Bush Officially,**
    **This Lawsuit Is Barred by this Court's**
    **Prior Dismissal Based on the Eleventh Amendment**

As noted at the outset, this lawsuit is substantively identical to May v. State of Florida, case no. 99-7623-C.V.-Dimitrouleas, which was dismissed with prejudice as to the State and Governor Bush officially by the Court's orders of January 20, 26 and 31, 2000. (See Exhibit A and composite Exhibit B hereto). George May is the plaintiff in both lawsuits. The legal issues are the same.

The only difference is nominal rather than actual. In case no. 99-7623, the named defendants were the State of Florida, and Governor Bush officially and individually. Here, the SFWMD is the only named defendant. However, May also alleges the SFWMD is an "agency of the State of Florida" (complaint, ¶5). Throughout his complaint, he refers to "defendant's" (sic) in the plural, and asserts their liability is joint. (e.g., complaint, ¶12). Again, May effected service on Bush "individually," and as the "chief executive officer" of the SFWMD. (See Ex. C hereto).

Later, Bush will urge his is not the SFWMD's chief officer. Assuming such, May has effectively sued Bush in his official capacity, just as he did in case no. 99-7623. As to Bush officially, this Court very recently dismissed case no. 99-7623 with prejudice. Res judicata precludes re-litigation against Bush

in his official capacity.

Res judicata notwithstanding, the Eleventh Amendment bars this suit against Governor Bush.  "Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court."  Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 113 S.Ct. 684, 687-88 (1993) [internal quote and cite omitted].  In contrast to the style of the lawsuit, the complaint expressly alleges the SFWMD is an agency of the State; other allegations repeatedly refer to multiple defendants.  All factual allegations are generically against the "defendant's" (sic) or the SFWMD as the state's purported agent.  Although the summons names Jeb Bush "individually," there is only one allegation against him.  That allegation mentions involves an official act only, the writing of a wholly innocuous letter.  (See complaint, ¶29 & Ex. D hereto).

Official capacity lawsuits are the equivalent of suits against the governmental entity in which the person holds office.  See Kentucky v. Graham, 105 S.Ct. 3099 (1985).  The Eleventh Amendment prohibits an action for damages against a State, whether in its own name, or against its officials in their official capacities.  See Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986), and Will v. Michigan Department of State Police, 109 S.Ct. 2304 (1989).  As the Eleventh Circuit has repeatedly recognized, the State of Florida has not waived its immunity from suit under the Eleventh Amendment.  Schopler v. Bliss, 903 F.2d 1373, 1378 (11th Cir. 1990).  This

6

immunity applies to state officers who may be sued for damages in their official capacities. *Id.* at 1378, n.3, *citing* <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985).

May seeks money damages only, in excess of $1 billion. (*See* complaint, ¶38). Alone, the incredible amount of damages, which almost no private individual would have, also strongly indicates May is suing Bush in his official capacity. Also, if the SFWMD is indeed Florida's agent, then such damages would come from Florida's treasury. The Eleventh Amendment applies:

> [A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.

<u>Edelman v. Jordan</u>, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). *See also* <u>Ford Motor Co. v. Department of Treasury</u>, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed.389 (1945) ([W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants); <u>John G. & Marie Stella Kennedy Mem. Found. v. Mauro</u>, 21 F.3d 667 (5th Cir. 1994) (an action that seeks damages for a "taking" that would be payable from the state treasury is barred by the Eleventh Amendment).

The doctrine of <u>Ex Parte Young</u>, 209 U.S. 123 (1908), does not allow this suit to go forward. First, May seeks only money damages for past conduct allegedly by the defendants; he does not request

7

injunctive or declarative relief beyond proof of a taking. Second, although that doctrine allows state officials to be sued in federal court "to ensure that the [state] officer's conduct is in compliance with federal law," _Seminole Tribe of Florida v. Florida, et al._, 116 S.Ct. 1114 (1996), it absolutely does not apply to States and their agencies:

> The doctrine of _Ex Parte Young_...is narrow: it applies only to prospective relief,... and has no application in suit against the States and their agencies, which are barred regardless of the relief sought.

_Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy_, 113 S.Ct. 684, 688 (1993), _citing_ _Cory v. White_, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982).

To invoke _Ex Parte Young_, May must show this lawsuit is not against the State itself. _Pennhurst State School & Hospital v. Halderman_, 465 U.S. 89, 101-103, 104 S.Ct. 900, 908-909, 79 L.Ed.2d 67 (1984). The relief sought (damages only) would not be against Jeb Bush individually; it would operate against the State and is "retroactive" by virtue of seeking past damages. _See_ _Hawaii v. Gordon_, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963) (The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter); _Pennhurst_, 465 U.S. at 101, 104 S.Ct. at 908, n.11 ("The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public

treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act") [internal quotations omitted].

As the Eleventh Circuit recently explained:

> Because of the important interests of federalism and state sovereignty implicated by Ex parte Young, however, the doctrine is not without limitations--indeed, two are relevant to this appeal. First, the Ex parte Young doctrine applies only to ongoing and continuous violations of federal law. In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct. This requirement protects states by setting a minimum threshold for abrogating a state's constitutional immunity. Second, ... the Supreme Court recently said that the Ex parte Young doctrine does not apply where the equitable relief sought implicates special sovereignty interests. Thus, if prospective relief would invade a state's sovereignty as much as an award of money damages would, the action will be barred by the Eleventh Amendment.

Summit Medical Associates, P.C. v. Pryor, 180 F.3d 1326, 1337 (11th Cir. 1999) [internal quotes and cites omitted].

Again, the style of the complaint names only the SFWMD as a defendant. May, however, alleges the SFWMD is an agent of the state (complaint, ¶5), and has effectuated service on Bush as the SFWMD's "chief executive officer." He cannot have it both ways. If he wants to sue Governor Bush in his official capacity for past damages, he must do so in state court. If he wants to sue the SFWMD for past damages in federal court, the Eleventh Amendment bars suing Bush as a defendant in his official capacity.

9

2. **The Complaint Fails to State a Claim for Which Relief Can Be Granted, as Governor Bush Is Not the "Chief Executive Officer" of the SFWMD.**

As a matter of law, Governor Bush is not the "chief executive officer" of the SFWMD.  Thus, the complaint fails to state a claim for which relief can be granted as to Governor Bush officially.

Under §373.079(4)(a), Florida Statutes, the "executive director" is appointed by the governing board.  Such appointment is "subject to approval by the Governor" and confirmation by the Senate.  *Id.*  Having the Governor approve himself as executive director makes no sense.  Also, the state Constitution would prevent a sitting governor from holding a second office as executive director of a water management district.  *See* Art. II, §5(a), Fla. Const. ("No person shall hold at the same time more than one office under the government of the state ....").

Even an attachment to the complaint refutes May's claim that Governor Bush is the chief officer of the SFWMD.  The August 13, 1999, letter to May from Governor Bush referred May to "Mr. Frank Finch, Executive Director of the [SFWMD]."  (*See* Ex. D hereto).  The SFWMD's website shows Mr. Finch as its Executive Director.  (*See* Ex. E hereto).

Governor Bush requests the Court take judicial notice that the Executive Director of the SFWMD is Frank Finch.  Consequently, May cannot state a claim against Bush as the "chief executive officer" of the SFWMD.

10

3.  **For Governor Bush Officially and Individually, the
    Complaint Is Frivolous and Fails to State a Claim**

Simple inspection shows all events which would posit liability in Defendant Bush occurred well before he was elected or sworn in as Governor.  As to him, the complaint--read with its exhibits-- alleges only that Bush (in August 1999) answered a letter sent to him by May.  That letter merely referred May to the SFWMD.  (*See* Ex. D hereto).  All other factual allegations are not well pled.

Only well-pled factual allegations in a complaint must be accepted as true for purposes of ruling on a motion to dismiss. *See* Response Oncology, Inc. v. Metrahealth Insurance Co., 978 F.Supp. 1052, 1058 (S.D.Fla.1997) ("Courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom, but need not accept ... conclusory allegations; unwarranted deductions; or mere legal conclusions asserted by a party.").  As stated more emphatically by another court:

> The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice, *see* Mullis v. United States Bankruptcy Court, 828 F.2d 1385, 1388 (9th Cir.1987), that are conclusory or mere legal conclusions, that are unwarranted deductions of fact or unreasonable inferences, *see* Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir.1994); Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981), that are **contradicted by documents referred to in the complaint**, *see* Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir.1994), or that are internally inconsistent[.] [e.s.].

11

Riggs v. Clark County School Dist., 19 F.Supp.2d 1177, 1179 (D. Nev. 1998).

All of May's allegations which would posit culpability for violation of his civil rights should be disregarded. His allegations of death threats are totally unsupported, contradicted by attachments to the complaint, and simply too fanciful to be worthy of belief. For example, one attachment to his complaint is a May 23, 1994 letter from the SFWMD to May's dissolved corporation. This letter shows the SFWMD was trying to voluntarily acquire May's parcel; and certainly does not intimate threats of any kind. It is purely an offer to acquire May's parcel for $12,800 per acre. It goes so far as to assume May would not be interested in voluntary sale if he did not respond by a certain date; thereby relieving him of any need to respond. (See Exhibit F hereto.).

Paragraph 24 alleges May received a fraudulent judgment by mail on March 7, 1996; and implies Defendants were involved through a process server they hired. Such allegations are directly contradicted by two more letters which May attached to his complaint. These letters (dated March 28, 1995 and March 7, 1996) are from the attorney for a private individual ("Mr. Fischer") not involved in this case, who sued May's corporation. The March 1995 letter requests May's cooperation, without litigation, in obtaining clear title to a parcel the dissolved corporation had sold; so that

the parcel could be re-sold to the SFWMD.  The March 1996 letter recited how May was personally served with a complaint, and that the resultant judgment had also been sent earlier by certified mail.  Whatever May's feeling about the judgment, Defendants had absolutely nothing to do with it.  (*See* Exhibits G and H hereto).

In paragraph 25, May alleges he moved to void a judgment against his dissolved corporation, and started receiving death threats.  These threats are strongly contradicted by another attachment, a letter (dated March 2, 1995) to May from an employee of a private land title company working with the SFWMD.  The letter implies May and the letter-writer had an angry telephone conversation, and expresses the writer's profound apology.  In addition to eliminating any "threat" perceived by May, the letter has no connection to Governor Bush, officially or individually, or to the State of Florida.  (*See* Exhibit I hereto).

As to voiding the judgment, May does not mention any particular legal proceeding.  He does not reveal the grounds or disposition of his motion, or any appeal therefrom.

To the contrary, another attachment to the complaint shows that he attempted to retain private counsel, who declined to represent him.  The attachment (letter dated March 21, 1996) mentions a pro se motion to set aside the judgment (i.e., the trial court's 2/28/96 order).  Based on the letter's March 1996 date, that order is actually a judgment resulting from litigation between

**13**

May and a private individual ("Mr. Fischer"), and has nothing to do with Governor Bush. (*See* Exhibit J hereto).

In paragraph 26, May alleges he sold his land for the appraised price in March 1997. He alleges the sale was made under fear for his life. This, too, is not a well-pled factual allegation; given the "threatening" letter was two years old, and came from a private individual. (*See* Exhibit I hereto).

In paragraph 29, May alleges he "requested" compensation in December 1999, but was denied a forum. He does not allege facts showing he was denied a forum or a legal proceeding, if one were available to dispute a taking (through physical invasion of flooding) alleged to have occurred <u>more than eight years earlier</u>, in May 1991. (complaint, ¶20). The true nature of the 1999 "request" is in the letter (dated December 6, 1999) from May to Blair LittleJohn (SFWMD) and attached to the complaint. There, May outrageously demanded $5 million per acre for his "gambling casino property" allegedly robbed from him by the SFWMD. (*See* Exhibit K hereto).

The only connection between Governor Bush and this case is Bush's letter of August 13, 1999. It thanks May for an earlier letter, and directs him to Mr. Frank Finch, the "Executive Director of the [SFWMD]." It shows absolutely no refusal by the Governor or the SFWMD to provide May with a forum.

Paragraph 30 of the complaint is May's allegation the SFWMD

14

said it would pay May, pursuant the same August 13, 1999, letter described above. That letter has absolutely nothing to do with any payment. (*See* Exhibit D hereto).

The attachments to the complaint so contradict the often-bizarre factual allegations therein, that this Court cannot accept any "facts" which might establish a violation of May's rights by Governor Bush. Simple inspection of the complaint reveals all the events--except the 1999 correspondence discussed above--took place before Governor Bush was elected or sworn in, and have nothing to do with him as a private individual. With the unacceptable factual allegations rejected, the complaint fails to allege any violation of May's rights by Governor Bush in <u>any</u> capacity.

Finally--in a substantively identical complaint--this Court has all but held May's factual allegations unworthy of belief:

> The Court notes that Plaintiff's Complaint is fraught with contradictory statements, indeterminable accusations and unbelievable assertions. However, the Court finds the case may be better determined on the Defendants' eleventh amendment claim of immunity.

*See* the order of January 20, 2000 in case no, 99-7623, at page 3. (Ex. B hereto).

If May's allegations were not worthy of belief on January 20, the same allegations are not worthy of belief now. May has no case against Bush. For May to maintain otherwise is frivolous.

15

### 4.  <u>Governor Bush Cannot be Sued under 42 U.S.C. §1983.</u>

Construed liberally, May's complaint lodges two causes of action, a taking and a conspiracy to deprive him of property rights. As to the conspiracy claim, May invokes only §1983. The only defendant named in the complaint is the SFWMD. However, May effected service on Governor Bush as the chief executive officer of the SFWMD. Out of caution, the Governor is responding as if he were a named Defendant.

It is well established that a state official cannot be sued directly under §1983. <u>Will v. Michigan Dept. of State Police</u>, 109 S.Ct. 2304, 2312 (1989) ("We hold that neither a State nor its officials acting in their official capacities are "persons" under §1983.").

The complaint's allegations all involve events preceding Governor Bush's election, or one instance of innocuous written correspondence between May and the Governor. If Bush is assumed to be sued in his official capacity, then suing "Jeb Bush" is the same as suing the State directly. *Id.* at 2312 ("But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." [cite omitted]). Therefore, "Jeb Bush" as "chief executive officer" of the SFWMD is not amenable to suit under §1983, and must be dismissed prejudice.

5.  **This Court Lacks Jurisdiction over the Taking Claim**

As to the taking claim, May does not allege he exhausted state court remedies.  Read most favorably, May's interest in the flooded parcel was extinguished through condemnation proceedings, which proceeded to judgment.

May filed a pro se motion to set aside an undescribed judgment.  It is not clear whether he moved against the judgment in the condemnation proceedings, or against an unrelated judgment against him in litigation brought by a private individual over a different parcel.

Assuming he sought to set aside the judgment as to the parcel allegedly flooded by the SFWMD, May does not reveal the grounds for the apparent denial of that motion.  He does not allege he pursued an appeal, or any other legal remedy.  He does not allege he timely pursued any state court remedy after his property was flooded in 1991.

In short, May cannot reasonably maintain he exhausted state court remedies.  This court lacks subject matter jurisdiction over any claim arising from the 1991 flooding of the parcel at issue. *See* Reahard v. Lee County, 30 F.3d 1412, 1416-18 (11th Cir. 1994) (until landowners "have pursued their state remedy [for taking without just compensation], the federal courts are without subject matter jurisdiction"), *cert. den.* 115 S.Ct. 1693 (1995).

17

6.  **The Civil Rights Claim for a Taking is Barred
    by the Applicable Statutes of Limitation**

If May's complaint is construed as alleging an inadequate remedy for the 1991 taking, his civil rights action began running in that year, when his land was flooded. The applicable statute of limitation is four years. *See* Heckman v. City of Oakland Park, 644 So.2d 525, 526 (Fla. 4th DCA 1994) (limitation period for civil rights claim against city began running when city passed resolution requiring dedication of easement by landowners).

"When an action founded upon a congressionally-created right is brought in a state court, ... the state court will apply the relevant federal statute of limitation along with the federal rules on tolling and other ancillary matters." Orpheus Investments, S.A. v. Ryegon Investments, Inc., 447 So.2d 257, 259 (Fla. 3d DCA 1983). However, since §1983 does not include a limitation period, the appropriate state limitation period applies. *See* 42 U.S.C. §1988.

For purposes of selecting the appropriate state limitation period, "§1983 claims are best characterized as personal injury actions[.]" Wilson v. Garcia, 105 S.Ct. 1938, 1949 (1985). Florida's limitation period for personal injury actions is four years, with some exceptions providing shorter periods. *See* §95.11(3), Florida Statutes. *See also*, Heckman (applying four year limitation period).

Again, May's parcel was flooded in May 1991. (complaint, ¶8 & ¶20). This suit was not filed until December 1999. Any civil

18

rights claim based on the taking is barred by the four year limitation period.

## CONCLUSION

The Court should dismiss the complaint, with prejudice, as to Governor Bush in his official and individual capacities.

Respectfully submitted,

**ROBERT A. BUTTERWORTH**
**ATTORNEY GENERAL**

**Charlie McCoy**
Florida Bar No. 0333646
Assistant Attorney General
Office of The Attorney General
The Capitol, Suite PL-01
Tallahassee, FL 32399-1050
(850) 414-3300
(850) 488-4872 (fax)

## CERTIFICATE OF SERVICE

I certify a true copy of the foregoing has been furnished by U.S. Mail to **GEORGE MAY**, *pro se*, P.O. Box 32247, Palm Beach Gardens, Florida 33420; and **RUTH CLEMENTS**, counsel for the South Florida Water Management District, M.S.C. 1410, P.O. Box 24680, West Palm Beach, Florida 33416-4680; this _21st_ day of March, 2000.

**Charlie McCoy**
Assistant Attorney General

*<charles>may\ftlaud2\dismiss.wpd*

19

## TABLE OF EXHIBITS

| Exhibit | Item | Date |
|---------|------|------|
| A | Complaint from May v. State, case no. 99-7623-C.V.-Dimitrouleas | 12/13/99 |
| B | Orders Dismissing case no. 99-7623 with prejudice [composite] | 01/20, 26 & 31/2000 |
| C | Summons served on Gov. Bush | 03/13/2000 |
| D | Letter to May from Gov. Bush | 08/13/99 |
| E | Pages from Website of the SFWMD (visited 03/20/2000) | N.A. |
| F | Letter to "Sirs" from Barbara Bernstein (SFWMD) | 05/23/94 |
| G | Letter to May from B.J. Reeves | 03/28/95 |
| H | Letter to May from B.J. Reeves | 03/07/96 |
| I | Letter to May from Univ. Title, Incorp. | 03/02/95 |
| J | Letter to May from James W. Anderson | 03/21/96 |
| K | Letter by May to Blair LittleJohn (SFWMD) | 12/06/99 |

# ADDITIONAL

# ATTACHMENTS

# NOT

# SCANNED

PLEASE REFER TO COURT FILE