UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

GEORGE MAY,

        Plaintiff,

v.

SOUTH FLORIDA WATER
MANAGEMENT DISTRICT,

        Defendant.

_____/

CASE NO. OO-6191-CIV-DIMITROULEAS
(Magistrate Johnson)

**DEFENDANT'S MEMORANDUM
OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS**

    Defendant, by and through undersigned counsel and pursuant to General Rule 7.1 of this Court's Local Rules, submits the following memorandum of law in support of its motion to dismiss.

### I. INTRODUCTION

    Plaintiff George May, *pro se,* filed this action on February 7, 2000 seemingly alleging causes for inverse condemnation under 42 U.S.C. §§1983 and 1985, in addition to the Fifth and Fourteenth Amendments of the United States Constitution. No prior action has been filed in state court.

    Plaintiff's Complaint is not a model of clarity. For example, it is unsure what property was allegedly taken through the actions of the SFWMD. However, it can be ascertained that the Plaintiff is attempting to allege an inverse condemnation.

    Previously, this Court in this action, dismissed with prejudice any claims against Governor Bush. As is peculiar with Mr. May, Governor Bush was not a named defendant however, he was served with the Complaint, "Individually, and as Chief Executive Officer, South Florida Water Management District."

Coincidentally, Plaintiff has another similar case now pending in the Honorable Judge Jordan's Court. See George May v. South Florida Water Management District, Case No. 00-0519-CIV-JORDAN (S.D. Fla.). In that case, although the SFWMD is the only named defendant, a summons was once again served on Governor Bush, "Individually, and as Chief Executive Officer, South Florida Water Management District." A motion to dismiss on the basis of the Eleventh Amendment is pending.

In addition, this Court has entered Orders on January 20, 26 and 31, 2000, as well as an Order on Reconsideration dated March 21, 2000, dismissing any and all claims as they pertained to Governor Bush in another one of Plaintiff's myriad of cases. See George May v. The State of Florida and Jeb Bush, Case No. 99-7623 (S.D. Fla.). That case asserted virtually the identical allegations as those contained in the instant case and was dismissed in accordance with the Eleventh Amendment.

## II. DISCUSSION

The Motion to Dismiss raises a plethora of legal issues. For purposes of convenience, they may be broken down into two categories - jurisdictional and substantive issues.

### A. Jurisdictional Issues

### 1. Eleventh Amendment

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. art. XI. In construing the Amendment, the Supreme Court has "understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition which it confirms." Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) (citations omitted). The Court stated:

> That presupposition, first observed over a century ago in Hans v. Louisiana, has two parts: first, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.

Id. (citations omitted).

This limitation on the judicial power of the United States is a "compelling force," Ford Motor Co. v. Indiana, 323 U.S. 459, 467 (1945), extending to all suits regardless of the relief sought. Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). By its very terms the Amendment applies to "any suit in law or equity," and thus bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments or agencies, Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100-02 (1984), by foreigners, citizens of another state, or a state's own citizens, Hans v. Louisiana, 134 U.S. 1 (1890).

### a.   District Is Entitled To Eleventh Amendment Immunity

Whether an agency is an arm of the state protected by the Eleventh Amendment "turns on its function and character as determined by state law." Fouche v. Jekyll Island - State Park Auth., 713 F.2d 1518, 1520 (11th Cir. 1983) (citations omitted). The Eleventh Circuit explained that:

> Factors that bear on this determination include the definition of "state" and "political subdivision," the

> State's degree of control over the entity, and the
> fiscal autonomy of the entity.

Id. The Supreme Court has also recognized that these factors
accord with the "twin reasons" for the passage of the Eleventh
Amendment: 1) to protect the public purse; and 2) to accord the
States the respect owed them as sovereign members of the
federation. Hess v. Port Authority Trans-Hudson Corp., 513 U.S.
30 (1994).

Although the question of Eleventh Amendment immunity is one
of federal law "to evaluate the relationship between the named
defendant and the state to determine whether the suit is in
reality against the state, a federal court must look to the
entity's function and characteristics as determined by state
law." Maqula v. Broward General Medical Center, 742 F. Supp. 645,
649 (S.D. Fla. 1990).

The Eleventh Circuit has identified several specific factors
for courts to consider in determining whether a political
subdivision such as the District is an arm of the state protected
by the Eleventh Amendment: (1) how state law defines the entity,
(2) the agency's fiscal autonomy, (3) what degree of control the
state maintains over the agency, (4) where the entity derives its
funds, and (5) who is responsible for judgments against it.
Robinson v. Georgia Dept. of Transp., 966 F.2d 637, 638 (11th
Cir. 1992), cert. denied, 506 U.S. 1022 (1992); Tuveson, 734 F.2d
at 732; and, Fouche, 713 F.2d at 1520.

Although several courts of appeals have regarded the final
factor of who ultimately pays as the most crucial, the Eleventh
Circuit has stated the most important factor is how the state

courts have treated the entity. Tuveson, 734 F.2d at 732; Huber, Hunt & Nichols, Inc. v. Architectural Stone Co., 625 F.2d 22, 25 (5th Cir. 1980)[1].

### i. The District is Defined as a State Agency

Turning to the factors identified in Fouche, Robinson, and Tuveson, it is clear that the first factor, how state law defines the entity, is determined in favor of immunity under the Eleventh Amendment. The Florida Supreme Court, Florida appellate courts and the Eleventh Circuit have recognized that a water management district is an agency of the State. The Eleventh Circuit in United States v. South Florida Water Management District, 28 F.3d 1563, 1567 (11th Cir. 1994), cert. denied, 115 S.Ct. 1956 (1995) stated that the District is a state agency, while the Florida Supreme Court has described the District as "an arm or instrumentality of the sovereign state," Dade County v. Little, 115 So.2d 19, 20-21 (Fla. 3d DCA 1959) and as "a governmental agency of the state" Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District[2], 82 So. 346, 350 (Fla. 1919) ("It seems to us that the board. ....is in no sense a private corporation, but that it is a public quasi corporation, and, as such, a governmental agency of the state for certain

---

1 Decisions rendered in the Fifth Circuit prior to 10/1/81 have been adopted as binding precedent in the Eleventh Circuit. Bonner v. City of Prichard,Ala., 661 F.2d 1206 (11th Cir. 1981) (en banc).
2 The District is the successor agency to the Everglades Drainage District,which was established by Chapter 6456, Laws of Florida (1913). The Everglades Drainage District was comprised of eleven counties. All of the counties are presently within the jurisdiction of the District. The Everglades Drainage District was abolished in 1949 pursuant to Chapters 25211 and 25420, Laws of Florida, with all of its assets being transferred to the Central and Southern Florida Flood Control District which is the predecessor of the District.Chapter 72-299, Laws of Florida (Water Resources Act, Ch. 373, Fla. Stat.)

definite purposes, having such authority only as is delegated to it by law.") See also Dade County v. National Bulk Carriers, 450 So.2d 213, 216 (Fla. 1984) ("Key operational definitions of 'agency' and 'permit' limit the court action to state agency decisions involving Chapters 161, 253, 373[3], 380 and 403, Fla. Stat. Hence,... regional water management district decisions . . . are subject to circuit court action."); Martin v. Dade Muck Land Co., 95 Fla. 530, 116 So. 449, 467, 468 (Fla. 1928) ("Everglades Drainage District[4] is a state agency."); Arundel Corporation v. Griffin, 103 So.422 (Fla. 1925) ("The [District Governing] board is a state agency created by statute, and it has only a drainage fund that is dependent upon taxation and is required to be used for designated public purposes."); Rorick v. Reconstruction Finance Corp., 198 So. 494, 496 (Fla. 1940) (citing Arundel Corporation v. Griffin, 103 So.422 Fla. 1925)) ("[Everglades Drainage District] to be an agency of the State and the authority it exercises to be exercised for the State."); Florida Wildlife Fed'n v. Goldschmidt, 506 F. Supp. 350, 356 (S.D. Fla. 1981) (District is "a State agency charged with responsibilities for water quantity and quality from both management and research perspectives.")

As such, the District is an "entity of state government." National Bulk Carriers, 450 So.2d at 216 (citing §373.617(1)(a), Fla. Stat.). Accordingly, state law defines a water management district as part of the State itself.

---

[3] Chapter 373, Fla. Stat., creates the District. The short title of that chapter is "Florida Water Resources Act of 1972." It is obvious that the legislature intended to apply the provisions of Chapter 373 to agencies dealing with state water resources.

The Court should be advised of two interlocutory orders: _Thomas v. South Florida Water Management District_, Case No. 96-896-CIV-ORL-19 (M.D. Fla. March 23, 1998) (Exhibit 1); and, _IT Corporation v. South Florida Water Management District_, Case No. 97-8872-CIV-HIGHSMITH (S.D. Fla. July 20, 1998) (Exhibit 2). The District submits that both _Thomas_ and _IT_ were wrongly decided and conflict with five prior decisions of the Southern District as well as a prior holding in the Middle District. _See_ _Indian Trails Water Control District v. South Florida Water Management District_, No.96-8598-CIV-RYSKAMP (S.D. Fla. Dec.12,1996) ("[T]he Court concludes that the District is an arm of the State of Florida protected by the Eleventh Amendment from suit in this Court.") (Exhibit 3); _Miccosukee Tribe of Indians of Florida v. South Florida Water Management District_, 980 F.Supp. 448 (S.D.Fla.1997)(_aff'd on other grounds_, No. 97-5488 (11th Cir. Nov. 19, 1998))("Thus, the factors that the Eleventh Circuit has identified as important in determining whether an entity is an arm of the state weigh in favor of finding that the District is a state agency."); _Bensch v. South Florida Water Management District_, 952 F.Supp. 790 (S.D. Fla. 1996)(Eleventh Amendment precluded claim against District); _Aumen v. South Florida Water Management District, et al._, No. 99-8928-CIV-RYSKAMP (S.D, Fla. March 28, 2000)("SFWMD is protected from liability by the 11th Amendment")(Exhibit 4); _Jacobson v. South Florida Water Management District, et al._, No. 99-10042-CIV-MOORE (S.D. Fla. February 14, 2000)("[SFWMD] [is] immune from suit under the Eleventh Amendment"(Exhibit 5); and, _McLean v. Southwest Florida_

---

[4] _See_ above n.3.

Water Management District[5], Case No. 95-1902-CIV-T-21C (M.D.
September 30, 1996)("A review of the various statutory provisions
concerning Defendant's structure and management confirm that
Defendant is a state agency. . . Accordingly, Plaintiff's claims
. . . are barred by the Eleventh Amendment.") (Exhibit 6).

In addition, the Middle District has held that the
District's predecessor, the Central and Southern Florida Flood
Control District, is a state agency for purposes of 42 U.S.C.
1983. Jay v. Carlton, Case No. 77-6-Orl-Civ-R, slip op. at 1, 2
(M.D. Fla. Dec. 8, 1977) (Exhibit 7).

Thomas (Exhibit 1) contains a one paragraph discussion of
Eleventh Amendment immunity.  The Thomas Court correctly cites
the Eleventh Circuit's decision in Tuveson for the proposition
that the "most important factor in determining whether an entity
is an agency of the state is how the state courts treat the
entity." The interlocutory order then incorrectly determines that
the District is not a state agency citing only to Martinez v.
South Florida Water Management District, 705 So.2d 611 (Fla. 4th
DCA 1997). Unfortunately, the Martinez Court was not given the
opportunity to review the plethora of state and federal cases
cited above that have consistently defined the District as an
agency of the state. In addition, the Thomas Court was not

---

[5] The State of Florida is divided into five water management districts, South
Florida Water Management District, Southwest Florida Water Management
District, Northwest Florida Water Management District, Suwannee River Water
Management District and, St. Johns River Water Management District. §373.069,
Fla. Stat. Each of these districts is overseen and performs functions
delegated by another state agency, the Department of Environmental Protection.
See §§373.016, 373.026 and 373.103, Fla. Stat.    Fla. Stat. §373.016 also
recognizes the obvious fact that the "waters of the state are among its basic
resources and that the [Florida Department of Environmental Protection] and
the [water management districts'] governing board . . . shall manage those
resources in a manner to ensure their sustainability."

informed that <u>Martinez</u> addressed the sole issue "of whether a water management district is a state agency for purposes of *section 112.0455, Florida Statutes (1991), the Drug-Free Workplace Act.*" <u>Martinez</u>, 705 So.2d at 612(emphasis added). In fact, the Eleventh Circuit has stated that whether an entity is a state agency for the purpose of applying certain Florida statutes is a separate and independent question from whether the entity is a state agency for Eleventh Amendment purposes. <u>Tuveson</u>, 734 F.2d at 735.

<u>IT Corporation v. South Florida Water Management District</u>, Case No. 97-8872-CIV-HIGHSMITH (S.D. Fla. July 20, 1998) (Exhibit 2) was the second interlocutory order to deny the applicability of the Eleventh Amendment immunity defense to the District. The <u>IT</u> court relied primarily on a 1996 Florida Supreme Court decision (<u>Canaveral Port Authority v. Dept. of Revenue</u>, 690 So.2d 126 (Fla. 1996)) in distinguishing its denial of Eleventh Amendment immunity from the prior three decisions of the Southern District granting Eleventh Amendment immunity to the District. Citing the <u>Canaveral</u> decision, the <u>IT</u> Order states that ". . . the Florida Supreme Court has also found that in order to be considered an agency for the purposes of immunity from ad valorem taxation, the entity must be denominated as an agency in the Florida Constitution. [South Florida Water Management District] is not so denominated.   Hence, the Florida Supreme Court has effectively left the issue [of the District's] general status as a state agency unresolved." <u>IT Corporation v. South Florida Water Management District</u>, Case No. 97-8872-CIV-HIGHSMITH, Docket Entry 5 (7/20/98 Order Granting in part Defendants' Motion to Dismiss,

p. 8). However, in <u>Canaveral</u> the State Supreme Court merely clarified what entities comprise "'the state' *for purposes of immunity from ad valorem taxation,"* <u>Canaveral</u>, 690 So.2d at 1228 (emphasis added). There is no correlation between Eleventh Amendment immunity and immunity from ad valorem taxation. This is evidenced by the fact that school districts and counties are part of "the state" for purposes of immunity from ad valorem taxation, but do not enjoy Eleventh Amendment immunity. <u>See</u> <u>Mt. Healthy City School District Board of Education v. Doyle</u>, 429 U.S. 274, 280 (1977); <u>See</u> <u>Aumen v. South Florida Water Management District</u>, No. 99-8928-CIV-RYSKAMP (S.D. Fla. March 28, 2000)(Exhibit 4).

Thus, the <u>Thomas</u> and <u>IT</u> courts erred in finding the District not to be a state agency entitled to Eleventh Amendment immunity where the courts relied on a single case which was limited to a specific statute and ignored numerous state and federal decisions to the contrary. This Court is not obligated to follow this erroneous path.

**ii. State Control Of The District's Fiscal Resources**

The second, fourth and fifth factors, the agency's fiscal autonomy, the state's responsibility for debts and where the agency derives its funds, also indicate that the District is entitled to Eleventh Amendment immunity.

The fact that an agency submits its budget to the state for approval suggests it is an arm of the state. <u>Robinson v. Georgia Dept. of Transp.</u>, 966 F.2d 637, 638 (11th Cir. 1992), <u>cert. denied</u>, 506 U.S. 1022 (1992). In Florida, each of the state's five water management districts must submit its annual budget and

expense report to the governor, who then may approve or disapprove the budget, in whole or in part. §§373.507, 373.536(5)(a)(c), Fla. Stat. If the District fails to comply with §373.536, Fla. Stat. (requirement to submit proposed budget to Executive Office of Governor), state funds shall be withheld. §373.536(5)(e), Fla. Stat. Furthermore, Florida law provides that "[a]ny [budget] provision rejected by the Governor shall not be included in a district's final budget." §373.536 (5)(b), Fla. Stat. This statutory provision effectively allows the Governor to control the District's policy priorities.

Similarly, the Eleventh Circuit ruled that the State of Georgia's retention of the power to approve a park authority's budget weighed in favor of finding Eleventh Amendment immunity for the park. Fouche, 713 F.2d at 1520. Furthermore this Court stated "[w]here the budget of an entity is submitted to the state for approval, this suggests that the entity is an agency of the state for purposes of [the state's degree of control over the entity, and the fiscal autonomy of the entity]." Harden v.Adams, 760 F.2d 1158, 1163 (11th Cir. 1985).

Moreover, the Florida Legislature has found "that the general regulatory and administrative functions of the [District] are of general benefit to the people of the state and should fully or in part be financed by general appropriations." §373.503(1), Fla. Stat. Pursuant to §§373.498, 373.501 and, 373.503(1), Fla. Stat., the District may be allocated or granted funds from legislative appropriations to provide assistance "as may be deemed necessary to defray the costs of the

*administrative, regulatory, and other activities of the
districts.*" §373.501, Fla. Stat. (emphasis added) These sections
contemplate that the state itself will play some role in
financing the expenses incurred by the water management
districts.

In addition, the District may issue bonds that are secured
by the revenue derived from the state documentary stamp tax.
§373.59(6) Fla. Stat..   Furthermore, there is no limit to the
amount of annual appropriations that the District may receive
from the State.

### iii. State's Control of the District

The District is a creature of state statute. Section 373.069
of the Florida Statutes creates five regional water management
districts, including the District, and sets their boundaries. The
District's status as a state agency is also demonstrated by the
fact that the Governor appoints and the Senate confirms the
District governing board members.§373.073(2), Fla. Stat. See
Tuveson, 734 F.2d at 734 (Governor has "total control over the
membership of" Florida Governor's Council on Indian Affairs,
Council held subject to Eleventh Amendment); Fouche, 713 F.2d at
1520 (majority of park authority appointed by governor and rest
are state officials, authority held subject to Eleventh
Amendment). Many of the governing board's powers are allowed only
by the discretion of the Department of Environmental Protection.
§§373.026(7), 373.103, Fla. Stat. In addition, the Florida Senate
must confirm and, periodically, reconfirm the appointment of the
District's executive director. §373.079(4)(a), Fla. Stat.

Also, Florida Statutes §373.507 requires each district to

submit an annual budget and expense report to the Governor, Legislature, and the governing body of each county. The budget is to be submitted "in a standard format prescribed by the Executive Office of the Governor which is generally consistent with the format prescribed by legislative budget instructions for state agencies." §373.536(5)(c), Fla. Stat. The Florida Legislature has further declared that "to the extent consistent with effective management practices, [District] shall approximate its fiscal and budget policies and procedures to those of the state. §373.016(5), Fla. Stat. The Executive Office of the Governor has line item veto authority over the budget of each water management district. §373.536(5)(a), Fla. Stat.

In addition, the state's auditor general is authorized to audit each district's accounts. §373.589, Fla. Stat. The state must also review and approve all rules or plans that the district promulgates. §§373.114, and 373.455, Fla. Stat. The state also has the authority to modify or rescind any rule, regulation or order of the District, other than those involving internal management. §373.114, Fla. Stat.

Furthermore, the District is an "executive agency" charged with "protecting the public's interest as directed by the legislature." See Wiregrass Ranch, Inc. v. Saddlebrook Resorts, Inc., 645 So.2d 374, 376 (Fla. 1994). The District performs a vital and central governmental function, for the legislature has declared that:

> The waters of the state are among its most basic resources. Such waters should be managed to conserve and protect water resources and to realize the full beneficial use of these resources. The [Florida Department of Environmental Protection] and the

> governing board shall manage those resources in a
> manner to ensure their sustainability.

§373.016(1)(2), Fla. Stat. The public purpose and governmental
function served by the District also supports Eleventh Amendment
immunity. See Fouche, 713 F.2d at 1521.

These factors were examined in Alaska Cargo Transport v.
Alaska Railroad Corp., 5 F.3d 378 (9th Cir. 1993) where the Court
of Appeals held that the Alaska Railroad Corporation ("ARRC"), a
private corporation, was entitled to Eleventh Amendment immunity,
although state law provided that liabilities must be satisfied
exclusively from ARRC's assets and no person had a right of
action against the state because of a liability of ARRC.
Nonetheless, the Court of Appeals looked to whether the state
would be the real, substantial party in interest. The Court
considered the vital function served by the operation of a
railroad along with statutory provisions for requests for direct
appropriations or grants from the legislature. The Court also
considered the governor's power to appoint board members and
restrictions on some powers.

Similarly, in the instant case, the District performs the
vital governmental function of conserving and protecting the
state water resources. See §373.016(1) (2), Fla. Stat. Also, as
in Alaska Cargo, the governor appoints the District Governing
Board, the District may be allocated or granted funds from
legislative appropriations, and many of the governing board's
powers are allowed only by the discretion of the state.

The court in Fouche further found the fact that the park
authority was a part of the state for purposes of sovereign

14

immunity was relevant to its analysis. Id. at 1522. In addition, the Florida courts have held that the District does enjoy sovereign immunity from suit under state law. South Florida Water Management District v. Taylor, 676 So.2d 11 (Fla. 3d DCA 1996).

The Eleventh Circuit in Fouche also looked for federal and state cases discussing the status of the authority, and after drawing analogies from other cases, found that the authority was entitled to Eleventh Amendment immunity. That type of analysis leads to the same conclusion here. Likewise, the Florida supreme court, in overruling a decision of the Fifth District Court of Appeal found:

> In the present case, *the statewide water management plan created and implemented by chapter 373 is primarily a state function serving the state's vital interest in protecting and managing a vital natural resource*. In fact, the Fifth District in the present case took notice of the interrelationships of various areas of the state and found that *water management districts further the state functions of water resource conservation, control, planning and development*.

St. Johns River Water Management Dist. v. Deseret Ranches of Fla. Inc., 421 So. 2d 1067, 1069 (Fla. 1982) (emphasis added). Thus, the Florida supreme court has recognized that the water management districts were created to perform a state function.

In addition, many entities similar to the District have been held to be immune from suit. See Ristow v. South Carolina Ports Authority, 58 F.3d 1051 (4th Cir. 1995), cert. denied, 516 U.S. 987 (1995)(port authority immune from suit); Pillsbury Co., Inc. v. Port of Corpus Christi, 66 F.3d 103 (5th Cir. 1995), cert. denied, 517 U.S. 1203 (1996)(local port authority immune from suit); Keller v. Prince George's County, 923 F.2d 30, 32 (4th

Cir. 1991)(county social services department immune from suit because "State law and procedure dictates how the Department operates and organizes its programs"); <u>Citrano v. Allen Correctional Center</u>, 891 F. Supp. 312, 321 (W.D. La. 1995) (private corporation operating prison immune from suit).

Based on the foregoing, it is evident that the third factor, the degree of state control over the agency, is also resolved in the District's favor.

The factors that the Eleventh Circuit has identified as important in determining whether an entity is an arm of the state for Eleventh Amendment purposes clearly support the finding that the District is a state agency.    Following <u>Robinson</u>, <u>Tuveson</u>, and <u>Fouche</u>, the District is entitled to Eleventh Amendment immunity.    <u>Accord</u> <u>Indian Trails Water Control District v. South Florida Water Management District</u>, No. 96-8598-CIV-RYSKAMP (S.D. Fla. Dec.12,1996); <u>Bensch v. South Florida Water Management District</u>, 952 F. Supp. 790 (S.D. Fla. 1996); <u>Miccosukee Tribe of Indians of Florida v. South Florida Water Management District</u>, 980 F. Supp. 448 (S.D. Fla. 1997) (<u>aff'd on other grounds</u>, No. 97-5488 (11th Cir. Nov. 19, 1998); <u>Aumen v. South Florida Water Management District</u>, No. 99-8928 (S.D. Fla. March 28, 2000); <u>Jacobson v. South Florida Water Management District</u>, No. 99-10042-CIV-MOORE (S.D. Fla. February 14, 2000); <u>McLean v. Southwest Florida Water Management District</u>, No. 95-1902-CIV-T-21C-NIMMONS (M.D. Fla. September 30, 1996).

**2. The SFWMD is not a "person" within the meaning of section 1983**

42 U.S.C. Section 1983 protects individuals from violations of federal rights committed by "persons" acting under color of

Title 42 U.S.C. Section 1983 provides in relevant part:

> Every *person* who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State,
> subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for
> redress.

42 U.S.C. Section 1983 (emphasis added).

The United States Supreme Court has held that an entity with Eleventh Amendment immunity is not a "person" within the meaning of Section 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). See also Howlett v. Rose, 496 U.S. 356 (1990); Jones v. Kirkland, 696 So.2d 1249 (4th DCA 1997). The SFWMD is an entity with Eleventh Amendment immunity. See Indian Trails Water Control District v. South Florida Water Management District, No.96-8598-CIV-RYSKAMP (S.D. Fla. Dec.12, 1996) ("[T]he Court concludes that the SFWMD is an arm of the State of Florida protected by the Eleventh Amendment from suit in this Court.")(Exhibit 1); Bensch v. South Florida Water Management District, 952 F.Supp. 790 (S.D. Fla. 1996)(Eleventh Amendment precluded claim against SFWMD); Miccosukee Tribe of Indians of Florida v. South Florida Water Management District, 980 F.Supp. 448 (S.D.Fla.1997)(aff'd on other grounds, No. 97-5488 (11th Cir. Nov. 19, 1998))("Thus, the factors that the Eleventh Circuit has identified as important in determining whether an entity is an arm of the state weigh in favor of finding that the District is a state agency."); Aumen v. South Florida Water Management District, et al., No. 99-8928-CIV-RYSKAMP (S.D, Fla. March 28,

2000)("SFWMD is protected from liability by the 11th Amendment")(Exhibit 4); <u>Jacobson v. South Florida Water Management District, et al.,</u> No. 99-10042-CIV-MOORE (S.D. Fla. February 14, 2000)("[SFWMD] [is] immune from suit under the Eleventh Amendment"(Exhibit 5); and, <u>McLean v. Southwest Florida Water Management District</u>[6], Case No. 95-1902-CIV-T-21C (M.D. September 30, 1996)("A review of the various statutory provisions concerning Defendant's structure and management confirm that Defendant is a state agency. . . Accordingly, Plaintiff's claims . . . are barred by the Eleventh Amendment.") (Exhibit 6).

In addition, the Middle District has held that the District's predecessor, the Central and Southern Florida Flood Control District, is a state agency for purposes of 42 U.S.C. 1983. <u>Jay v. Carlton</u>, Case No. 77-6-Orl-Civ-R, slip op. at 1, 2 (M.D. Fla. Dec. 8, 1977) (Exhibit 7).

Accordingly, the §1983 claim against the SFWMD is barred.

### 3. Ripeness

Plaintiff asserts alleged violations of the Fifth and Fourteenth Amendments seeking damages allegedly caused by Defendant's flooding of his property. Plaintiff asserts that the District's actions constitute a "taking" without just compensation. The Fifth Amendment does not prohibit the

---

[6] The State of Florida is divided into five water management districts, South Florida Water Management District, Southwest Florida Water Management District, Northwest Florida Water Management District, Suwannee River Water Management District and, St. Johns River Water Management District. §373.069, Fla. Stat. Each of these districts is overseen and performs functions delegated by another state agency, the Department of Environmental Protection. <u>See</u> §§373.016, 373.026 and 373.103, Fla. Stat.  Fla. Stat. §373.016 also recognizes the obvious fact that the "waters of the state are among its basic resources and that the [Florida Department of Environmental Protection] and the [water management districts'] governing board . . . shall manage those resources in a manner to ensure their sustainability."

taking of property; it prohibits any taking without just compensation. Hodel v. Virginia Surface Mining & Reclamation Assn., Inc., 452 U.S. 264 (1981). No constitutional violation occurs until just compensation is denied. The nature of the constitutional right requires that a property owner utilize procedures for obtaining compensation before filing in federal court.

Plaintiff has a remedy in state court for inverse condemnation. Reahard v. Lee County, 30 F.3d 1412, 1417 (11th Cir. 1994). Until Plaintiff exhausts all state procedures for compensation, including judicial and administrative proceedings, this case is not ripe for federal court review. Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172 (1985).

Therefore, this Court lacks subject matter jurisdiction. Reahard v. Lee County, 30 F.3d 1412, 1417 (11th Cir. 1994) (the question of ripeness goes to whether district court has subject matter jurisdiction).

### 4. Statute of Limitations

A defense based on the applicable statute of limitations can be asserted in a motion to dismiss if the facts constituting the defense are apparent on the face of the complaint. Roehner v. Atlantic Coast Development Corp., 353 So.2d 925 (Fla. 4th DCA 1978). It is obvious from the face of the Complaint, that the statute of limitations bars Plaintiff's action. Paragraph 20 of the Complaint states:

> [t]hat on or about May 9, 1985, the defendant's through
> their agent [?] the South Florida Water Management
> flooded the plaintiff's property and adjoining property
> and took the plaintiff's property by an uncompensated,
> and so unconstitutional, regulatory taking.

19

In Wilson v. Garcia, 471 U.S. 261, 266-68 (1985), the Supreme Court first enunciated the doctrine that requires federal district courts to apply the most appropriate or most analogous state statute of limitations to actions under §1983 civil rights actions. The applicable Florida statute for an inverse condemnation action is four years. See City of Pompano Beach v. Yardarm Restaurant, Inc., 641 So.2d 1377 (Fla. 4th DCA 1994), rev. den. 651 So.2d 1197, cert. den. 115 S.Ct. 2583. Therefore, Plaintiff's 1985 action is barred.

### Substantive Issue

A cause of action under §1985(3) requires:

> intent to deprive of equal protection, or equal privileges and immunities, mean[ing] that there must be some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). No allegation of such a class-based animus is present in this case. Therefore, the §1985 claim against the SFWMD should also be dismissed.

### Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail this 3ʳᵈ day of April, 2000 to George May, P.O.Box 32247, Palm Beach Gardens, FL 33420.

SOUTH FLORIDA WATER MANAGEMENT DISTRICT
3301 Gun Club Road
West Palm Beach, FL 33406
(561)687-6271
Facsimile (561) 687-6276

By_____
Ruth P. Clements
FL Bar No. 81338

# ADDITIONAL

# ATTACHMENTS

# <u>NOT</u>

# SCANNED

PLEASE REFER TO COURT FILE